IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

R.A.W.,

        Plaintiff,

   v.

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civil No. 21-18960 (RMB)

OPINION

**BUMB**, U.S. District Judge:

    This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion's reasoning.

**I.**    **STANDARD OF REVIEW**

    When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "'more than a mere scintilla' or 'such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons.*

1

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

II.     **FACTS**

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff's alleged onset date of disability is February 1, 2018, which date was amended from June 1, 2018, at the administrative hearing held before the ALJ on March 8, 2021. [Docket No. 9 (referred to hereafter as "Plaintiff's Brief"), at 1 (citations omitted); Docket No. 7 (hereafter the "Administrative Record" or "AR"), at 10.] Plaintiff highest level of education is an associate's degree, and at the time of her hearing, she was 58 years old and living with her two children (a 12-year old son and a 27-year old daughter). [Plaintiff's Brief at 3 (citations omitted).] Plaintiff has past relevant work experience as a Home Attendant and Nurse Assistant. [AR at 25.] Plaintiff protectively filed applications for DIB and SSI on October 31, 2018, claiming disability status due to the following impairments: "Blind or low vision, AFIB, Asthma, Breast Cancer stage 1, Cardiomyopathy, Hearing loss in both ears, Left knee replacement, Pulmonary Embolism, [and] Obesity." [AR at 336.]

Plaintiff's claim for social security benefits was denied both initially and upon reconsideration. [Plaintiff's Brief at 1.] Plaintiff requested and then appeared for a hearing before the Honorable Trina Moore (here the "ALJ"), which was held with all participants appearing by telephone during the COVID-19 pandemic. [AR at 10.] Impartial vocational expert Francesco Fazzolari (here the "VE") and impartial medical expert Dr. James W. Todd, M.D. both attended the hearing. [*Id.*] Plaintiff

4

was also represented by attorney Lauren Tovinsky at the hearing.[1] [*Id.*]

On April 21, 2021, the ALJ issued an unfavorable decision denying Plaintiff's claim for social security benefits. [*Id.* at 27.] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but her appeal was denied on September 27, 2021. [*Id.* at 1.] On October 18, 2021, Plaintiff filed a Complaint against the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), invoking the jurisdiction of this Court. [Docket No. 1 ¶ 3.]

III.   **ALJ'S DETERMINATION**

First, the ALJ determined that Plaintiff did not engage in any substantial gainful activity since her alleged onset date. [AR at 13.] Moving on to Step Two of the sequential analysis, the ALJ determined that Plaintiff had the following "severe" impairments that "significantly limit her ability to perform basic work activities as required by SSR 85-28":  obesity, breast cancer stage 1-in remission, obstructive sleep apnea, atrial fibrillation, cardiomyopathy, asthma, bilateral hearing loss, and diabetes mellitus. [*Id.* at 13–14.] Also at Step Two, the ALJ discussed, at length, why many of Plaintiff's other medically determinable impairments did not rise to the level of a "severe" impairment based on the relevant medical evidence of record, including her anemia, knee arthroplasty, carpal tunnel release, rotator cuff repair, cholecystectomy, diverticulitis, bladder suspension, and decreased visual acuity. [AR at 14–15.]

---

[1] Plaintiff was also represented by another attorney named Robert Petruzzelli at such time. [AR at 10.]

At Step Three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.* at 16.] Before turning to Step Four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. 404.1567(b) and 416.967(b), but with certain limitations:

> Occasionally climbing ramps and stairs. Never climbing ladders, ropes and scaffolds. Never overhead reaching bilaterally. Occasionally balancing, stooping, kneeling, crouching and crawling. Avoiding wetness, humidity, pulmonary irritants, and hazards such as unprotected heights and moving mechanical parts, loud noise.

[*Id.* at 17.]

Then, based on the above RFC and testimony from the VE, the ALJ found that Plaintiff could perform her past relevant work as Home Attendant, but not as a Nurse Assistant because the exertional level generally expected of that role exceeds the maximum exertional limit set by her RFC. [*Id.* at 25.] However, the ALJ also went on to find that Plaintiff had acquired work skills from her past relevant work that could be transferred to another occupation with jobs in significant numbers in the national economy, namely, in the role of Laboratory Clerk. [AR at 26.] Thus, the ALJ ultimately concluded, at Step Five in the sequential analysis, that Plaintiff was not disabled for purposes of social security benefits. [*Id.* at 27.]

IV. **ANALYSIS**

On appeal, Plaintiff asserts the following challenges to the ALJ's decision:

(1) the ALJ failed to provide a proper assessment of the Plaintiff's RFC; (2) the ALJ's findings at Step Four and Step Five of the analysis are not supported by substantial evidence; (3) the ALJ properly failed to weigh and consider the statements of Plaintiff; (4) that the appointment of the Commissioner is unconstitutional such that the ALJ did not have authority to decide Plaintiff's case; and (5) the Administrative Record provides a sufficient basis to award Plaintiff summary judgment with respect to her benefits claim. The Court now addresses these arguments, in turn.

### A.     The RFC Assessment is Not Supported by Substantial Evidence

Plaintiff's first challenge is that the ALJ failed to incorporate the following additional restriction in the RFC assessment: time-off from work "due to her impairments and treatment for same" evidenced by the "various surgeries, hospital visits, and medical procedures during the relevant period at issue." [Plaintiff's Brief at 12.] More specifically, Plaintiff argues that the absence of this needed limitation is especially significant given her diagnosis and treatment for breast cancer during the alleged period of disability, as well as the testimony at the administrative hearing of the VE that "either one or two absences per month on a consecutive monthly basis where the individual is establishing a pattern of absenteeism . . . would not be tolerated by any employer." [AR at 84; Plaintiff's Brief at 13–14.] Based on the Court's review of the record clearly showing Plaintiff's history of surgery, radiation, and chemotherapy during the relevant period for breast cancer, the Court agrees with

Plaintiff that, at a minimum, the ALJ should have explained why such a limitation was not included in her RFC assessment.

Indeed, Plaintiff's alleged onset date of disability, as amended, is February 1, 2018, which was the same month that Plaintiff received abnormal results from a mammogram screening, later confirmed to be breast cancer by biopsies taken in March and May of 2018. [AR at 18 (citing AR, Ex. 4F).] On May 7, 2018, Plaintiff underwent a right lumpectomy and sentinel node biopsy, then was to receive radiation treatment and "five cycles of chemotherapy from July 2018 through November 2018." [*Id.*] After some complications, Plaintiff's breast cancer was responsive to such treatment, and Plaintiff has had no recurrence or further chemotherapy since completing such treatment towards the end of 2018.[2] [Plaintiff's Brief at 12.]

The Commissioner is correct that the ALJ did expressly discuss the course of treatment for Plaintiff's breast cancer, concluding that other than this extensive treatment received in 2018, "the record documents an otherwise conservative course of treatment with only sporadic emergency room presentations and short hospital

---

[2] The record shows that Plaintiff was hospitalized on several occasions during this same period, including a four (4) day hospitalization in August 2018 due to pneumonia, a four (4) day hospitalization in September 2018 due to atrial fibrillation, and then again for four (4) days in December 2018 for trans-esophageal echocardiogram due to atrial fibrillation. [Plaintiff's Brief at 12–13 (citations omitted).] The record also notes two hospitalizations in 2019 due to diverticulitis, as well as once in February 2020 for a "battery generator change" related to Plaintiff's implantable cardiac defibrillator ("ICD") placement in 2011. [*Id.* at 13 (citations omitted).]

stays." [AR at 19.] The Court finds that a central theme of the ALJ's decision is that Plaintiff's breast cancer, prior to remission, is the only exceptional medical evidence of record, but that it does not support the Plaintiff's position that she is disabled because it was effectively managed (other than a few short hospital stays and emergency visits) and eventually treated. The ALJ also expressly acknowledged that as of the date of her decision, the Plaintiff's "current treatment consists of check-ups with an oncologist." [AR at 13.]

The fact that Plaintiff underwent treatment for breast cancer during the alleged period of disability, on its own, suggests to this Court that she might be absent from work more than once or twice a month during the period of alleged disability. Yet the RFC includes no such limitation for time-off from work for medical appointments, including follow-up appoints, which Plaintiff likely had many of even after going into remission. In fact, the ALJ even acknowledged that Plaintiff's ongoing treatment included check-ups with an oncologist, and earlier in the decision, the ALJ even states that after Plaintiff's breast cancer diagnosis in February 2018, Plaintiff "underwent surgery to remove nodes, radiation, and chemotherapy *once a week*." [AR at 13.] Thus, the ALJ decision is not entirely consistent with respect to how frequently Plaintiff had medical appointments during the relevant period and whether she would have required regular time of work for the same. The Social Security Act defines disability as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

>to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Thus, the relevant inquiry here does touch upon how long Plaintiff's medically determinable impairments last (or can be expected to last).

Plaintiff's breast cancer was quickly responsive to the treatment she received. Nevertheless, the ALJ was required to consider limitations and restrictions imposed by *all* of Plaintiff's medically determinable impairments and resulting symptomology in formulating her RFC assessment during the relevant period. SSR 96-8p. Further, the ALJ determined that Plaintiff's "breast cancer stage 1-in remission" was a "severe" impairment at Step Two of the analysis. [AR at 13.] Thus, because the ALJ made this finding at Step Two, the Court would expect limitations in the RFC assessment to account for the same, and the limitation the Plaintiff challenges should have been included, namely, time-off for regular medical appointments also seems reasonable in light of the record.

Although the ALJ did expressly consider Plaintiff's breast cancer treatment and history of hospitalizations, the Court shall remand and request that the ALJ expressly consider whether an additional limitation in the RFC assessment is appropriate to account for Plaintiff's routine time-off work for medical appointments. The Court also finds that there is a clear distinction between time-off work for frequent and routine medical appointments to manage ongoing treatment, and the current analysis by the ALJ, which is more limited to the issue of why a disease should no longer be considered as debilitating as it once was. The Court appreciates

10

the difficulty presented to the ALJ in weighing such an extensive amount of medical evidence that shows general improvement and eventual recovery for this specific impairment. However, additional analysis will assist the Court on appeal in reconciling some of the current findings in the ALJ's decision: specifically, the testimony of the VE regarding routine absences from work and whether any of her impairments require an additional limitation in the RFC assessment to account for regular time-off work, including Plaintiff's breast cancer stage 1-in remission determined to be a "severe" impairment at Step Two.

### B. If the RFC Assessment is Amended on Remand, the ALJ Must Revisit Her Findings at Step Four and Step Five

Any changes to the RFC assessment, on remand, would necessarily require the ALJ to revisit her findings at subsequent steps of the sequential analysis, namely Step Four and Step Five. Plaintiff argues on appeal that the ALJ's current discussion of both of these steps is not supported by substantial evidence. However, the Court does not find these arguments persuasive.

At Step Four, the ALJ determined that Plaintiff had past relevant work experience as a Home Attendant based on her prior jobs, including at Pilgrim Manor (from October 2004 to May 2007) and at Kennedy University Hospital (in 2014). Regarding her experience at Pilgrim Manor, Plaintiff asserts that "there is no evidentiary basis upon which the ALJ can conclude that the job was actually performed within the reduced range of light work." [Plaintiff's Brief at 19.] Plaintiff also asserts that the work she performed at Kennedy University Hospital is not

11

representative of a Home Attendant because the role she performed there was more akin to that of "a certified nurse's assistant/technician." [Plaintiff's Brief at 19.] In any event, the Court finds that Plaintiff has misconstrued what is actually required of the ALJ at Step Four. It is not the case that the ALJ must find that each of Plaintiff's former jobs is consistent with the RFC assessment. [*See* Plaintiff's Brief at 19 (arguing that "there is no evidentiary basis" that her job at Pilgrim Manor "was actually performed withing the reduced range of light work indicated in the RFC finding").] Instead, the relevant inquiry, cited by Plaintiff earlier in her brief, is whether Plaintiff can generally "perform [her] past relevant work as that work is generally performed in the national economy" consistent with her RFC assessment. [Plaintiff's Brief at 14 (citing SSR 96-9p).]

      Here, the ALJ relied on Plaintiff's own testimony that her job at Kennedy University Hospital involved lifting and carrying no more than 20 pounds in support of the finding that she can perform the role of Home Attendant (as that job is actually performed at the light exertional level) based on the current RFC assessment. [AR at 63.] In any event, the Court agrees with the Commissioner that "the record indicates the Plaintiff performed several different home attendant jobs, involving light exertional demands, that she does not dispute." [Docket No. 12 (hereafter "Commissioner's Brief"), at 23.] Indeed, Plaintiff testified that she also worked for a year at Nightingale Home Healthcare as a Home Health Aide. [AR at 66–67.] Thus, even if Plaintiff's work at Kennedy University Hospital and Pilgrim Manor were

unrepresentative of a Home Attendant, Plaintiff still had other past relevant work experience directly relevant to this job. The Court finds Plaintiff's Step Four argument unpersuasive.

The Court also finds Plaintiff's argument regarding the ALJ's findings at Step Five unpersuasive. Plaintiff argues that the record does not support the ALJ's finding that "Plaintiff's skills could transfer to the job of Laboratory Clerk and that this job is a 'representative occupation' suggesting there are more jobs that can be performed." [Plaintiff's Brief at 19–20.] The Court finds that this is also a mischaracterization of the record by Plaintiff. In fact, the ALJ reasonably relied on the VE's testimony—finding him credible and that his testimony was consistent with the Dictionary of Occupational Titles ("DOT")—and found that Plaintiff had developed transferable skill of "documentation and recording skills." [AR at 26.] Then, based on the VE's testimony, the ALJ found that such acquired skills would qualify Plaintiff as a Laboratory Clerk and that such position was not inconsistent with Plaintiff's RFC. [*Id.*] The Court also finds Plaintiff's related argument that the ALJ violated the Commissioner's Program Operation Manual System ("POMS") unconvincing since POMS—which are internal regulations for issuing SSA policy and operating instructions—"do not have the force of law." *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 (3d Cir. 1996) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981).

On appeal, the ALJ shall revisit Step Four and Step Five of the analysis only to the extent that additional restrictions are incorporated into the RFC assessment,

potentially impacting Plaintiff ability to perform the jobs presently identified.

### C.     Plaintiff's Remaining Arguments Are Not Persuasive

Plaintiff's next argument is that the ALJ failed to consider her own statements regarding her impairments and their resulting symptomology "based in very large part upon the Plaintiff's receipt of unemployment benefits for just one quarter in 2020." [Plaintiff's Brief at 22.] One notable finding made by the ALJ was that Plaintiff "received unemployment benefits in the third quarter of 2020" and that "the collection of unemployment indicates a ready willing ability to work." [AR at 22.] However, the ALJ also correctly acknowledged and clarified that this finding was "not dispositive" since the "[r]eceipt of unemployment insurance benefits does not preclude the receipt of Social Security disability benefits." [*Id.* at 13, 22 (citing SSR 00-1c).] Further, the Court agrees with the Commissioner that the ALJ did expressly consider Plaintiff's "statements concerning the intensity, persistence, and limiting effects of those symptoms" finding them "not entirely consistent with the broader record," consisting primarily of medical evidence. [Commissioner's Brief at 27.] The Court is satisfied that the ALJ provided ample discussion as to why the medical evidence he cites did not corroborate the full extent of Plaintiff's symptomology as she self reported, both in the ALJ's relevant discussion of her findings at Step Two and with respect to the RFC assessment.

Plaintiff also challenges the ALJ's decision as unconstitutional because the Commissioner serves a longer term than the President and is removable only for

cause, such that the ALJ could not have constitutionally derived her authority to decide Plaintiff's case. [Plaintiff's Brief at 25 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)).] This Court has rejected this same argument in prior social security appeals. *See* S.*F. v. Comm'r of the Soc. Sec. Admin.*, Civ. No. 21-15484 (RMB), 2022 WL 4596721, at *7 (D.N.J. Sept. 30, 2022). Importantly, the Supreme Court explained in *Collins* that even if the relevant removal provision for the Commissioner is unconstitutional, a plaintiff cannot obtain retrospective relief absent some showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). The Court agrees with Commissioner that "Plaintiff cannot conceivably show that the President's supposed inability to remove the Commissioner without cause" affected, in any way, the ALJ's decision or Plaintiff's application for social security benefits. Plaintiff has failed to allege any circumstance showing that absent the challenged removal provision applicable to the Commissioner, her case would have been decidedly differently. As this Court previously explained, "there is no link between the ALJ's decision . . . and the allegedly unconstitutional removal provisions," such that Plaintiff is unable to show compensable harm. *S.F. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 4596721, at *8. Accordingly, Plaintiff's constitutional argument fails.

      Finally, the Court does not agree with Plaintiff's remaining argument that the record weighs heavily enough in her favor for the Court to grant her summary judgment for her disability benefits claim. [Plaintiff's Brief at 28.] As discussed

15

above, the Court finds that remand, as opposed to reversal, is appropriate to allow the ALJ the opportunity to supplement her decision for purposes of appeal, especially with respect to the RFC assessment.

## V. CONCLUSION

For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis. On remand, the ALJ shall consider whether an additional limitation in the RFC assessment is appropriate to account for Plaintiff's regular time-off work for medical appointments, including for breast cancer treatment during the period of alleged disability. To the extent the RFC is amended, the ALJ shall also revisit Step Four and Step Five of the sequential analysis and explain whether the revised RFC has any impact on such subsequent steps in the sequential analysis. An accompanying Order of today's date shall issue.

Date: <u>October 28, 2022</u>                                   s/Renée Marie Bumb
                                                                                Renée Marie Bumb
                                                                                U.S. District Judge